No. 9463.

## JOHN v. HATFIELD ET AL.

WITNESS.—*Competency.*—*Objection.*—When one is not wholly incompetent as a witness in a cause, but is incompetent as to particular matters, a general objection to his competency as a witness is properly overruled. The objection should be limited to the subject to which the incompetency applies.

DEED.—*Spoliation.*—*Fraud.*—*Vendor and Vendee.*—The insertion by another of the name of an additional grantee without the consent of the original grantee is a mere spoliation, which does not affect the rights of the latter, even as against a *bona fide* purchaser from the person whose name was so inserted, unless the real grantee has been guilty of fraud or negligence, whereby the purchaser was misled.

From the Grant Circuit Court.

*H. Brownlee* and *J. Brownlee,* for appellant.

*A. Steele* and *R. T. St. John,* for appellees.

BLACK, C.—This was a suit for partition of land, brought by the appellees against the appellant. The complaint alleged that the appellees were the heirs at law of their mother, Casba Hatfield, deceased; that during her life she was possessed, in her own right, of a large sum of money, and purchased therewith, of one Emerson Jester, certain land described, in Grant county, Indiana; that the deed therefor was executed, acknowledged and delivered to said Casba Hatfield in her own right, and as her separate property and estate; that she was the wife of David Hatfield, who survived her; that, after said deed had been so executed, said David Hatfield, without the

knowledge and against the consent and wishes of said Casba Hatfield, caused his name to be inserted in said deed as one of the grantees therein, wrongfully and fraudulently; that when this was done the appellees were minors; that, since the death of their mother, said David Hatfield sold and conveyed said land to one James Lynas, who sold and conveyed to the appellant who now claims to own it; that the appellees are the owners in fee of two undivided ninths of said land; that they derive their title from their mother by inheritance; that the appellant is the owner of seven-ninths of said land, and that the appellees are informed that he claims and derives his title from said Lynas, who derived his title from said David Hatfield. Prayer for judgment of partition, that their said interests be set off to appellees in severalty and for other relief.

The appellant answered in two paragraphs. The first was a general denial, and the second set up the making of improvements on said land by the appellant. The appellees replied, but the reply is not in the record.

At a subsequent term appellant filed his counter-claim, called therein a cross complaint, alleging that appellant was the owner in fee simple of certain land described, being the land described in the complaint; that appellees pretended to have some interest therein, the exact nature of which was unknown to appellant, which pretended interest or claim was a cloud upon appellant's title and his peaceful enjoyment of his land. Prayer for judgment divesting appellees of all right, title or interest in said real estate, and that appellant's title thereto be quieted.

The appellees answered this pleading by a general denial.

There was a trial by jury, who found for the appellees, and that they were entitled, as tenants in common with the appellant, to two-ninths of the land.

A motion for a new trial made by the appellant having been overruled, the court rendered judgment in accordance with the verdict, and appointed commissioners to make partition.

The overruling of the motion for a new trial is assigned as error.

. There are other assignments of error, but they are such as have been held invalid so often that no useful purpose could be served by setting them out.

Some of the causes stated in the motion for a new trial related to the admission of evidence over appellant's objections, but no grounds of objection appear to have been stated to the court below, and, therefore, these causes can not be examined. Busk. Pr. 288, and authorities cited.

One of the causes assigned in the motion was, that "the court erred in allowing the plaintiffs to testify in said cause over defendant's objections and exceptions."

The testimony is set out in the bill of exceptions in narrative form. Both of the appellees were witnesses and testified to matters which occurred prior to their mother's death, and also as to other matters. In one place in the bill it is said that the appellant "objected to the plaintiffs and children of Hatfield testifying, on account of incompetence." At another place, referring to the appellee Elizabeth Benson, it is said that the appellant, "at the proper time, objected to said witness, who is one of the plaintiffs and heirs of Casba Hatfield, testifying, on account of incompetency."

. The statutory provision, which it was supposed deprived these witnesses of competency, was as follows: "In all suits by or against heirs, founded on a contract with, or demand against the ancestor, the object of which is to obtain title to or possession of land or other property of such ancestor, or to reach or affect the same in any other way, neither party shall be allowed to testify as a witness, as to any matter which occurred prior to the death of such ancestor, unless required by the opposite party or by the court trying the cause," etc. Acts 1879, p. 246.

This statute did not render heirs wholly incompetent as witnesses in such causes. It prohibited them from testifying as to certain matters only.

It is not necessary to decide whether this is a suit of the kind referred to by the statute. The appellees were competent witnesses as to the matters concerning which they testified, which did not occur prior to their mother's death, and the objections made upon the trial and referred to in the motion for a new trial did not specify any portion of their testimony as to which they were supposed to be incompetent. If the suit be of the character contemplated by the statute, the objection should have been directed to particular evidence.

The ground of objection stated on the trial was insufficient; and, aside from this fact, the motion for a new trial did not sufficiently designate the evidence claimed to be improper. *Ball* v. *Balfe*, 41 Ind. 221; *Clouse* v. *Elliott*, 71 Ind. 302; *McClain* v. *Jessup*, 76 Ind. 120.

The motion for a new trial further assigned as causes that the verdict was not sustained by the evidence, and that it was contrary to law.

The evidence was, in substance, as follows:

David Hatfield and Casba, his wife, the father and mother of the appellees, lived together unhappily. The latter had five or six thousand dollars, which the former got. She owned a certain house and lot and a stock of merchandise, in Jerome, Howard county, Indiana. David negotiated with Emerson Jester for the exchange of said house and lot and said stock of goods for the land in controversy. The deed of conveyance of this land was made by Jester and his wife and acknowledged by them before one William D. Westfield, a justice of the peace in Grant county, in this State, neither said David nor said Casba being present. By direction of David, and as requested by Casba, the latter was the sole grantee in said deed. Jester took this deed to the residence of said David and Casba, in Howard county. When David saw the deed, he said that unless his name were inserted in it, he would not sign the deed for said house and lot. His wife objected to his having his name in the deed for the land, and said that the property they were trading was her property, and that she

wished to keep this land for her children. Besides said David and Casba and Jester, there were present the appellees and one Baldwin, a justice of the peace. Casba was weeping. Her husband and Baldwin said that unless the husband's name were in the deed he would be turned out of doors at her death. There was some further talk, but what it was none of the witnesses knew. Jester took no part in it. Baldwin inserted the name of David Hatfield in the deed, as a grantee, after the name of his wife, and placed the deed on a table. The deed for the conveyance of the house and lot was then signed by said David and Casba. Jester was a witness on the trial, and testified that he would not have delivered the deed for the land if the Hatfields had not executed the deed to him. Casba was ill at the time of this transaction, and remained ill until her death, which occurred about two years afterward. After the deed had been so altered, Casba, still weeping, took it and said that it should not be recorded, and that she would keep it and have Jester make another. The deed for the land bore date October 2d, 1867, and was acknowledged on the same day. It was not acknowledged by either of the grantors after its alteration.

At the date of the trial, on the 24th of February, 1881, the appellee Valentine Hatfield was twenty-nine years old, and the other appellee, Elizabeth Benson, was thirty-two years old. A certified copy of the record of the deed was introduced in evidence by the appellees. Casba kept the deed in her possession, in a pocket of her dress, until her death. When a dress, in the pocket of which she had been keeping it, was washed, her daughter would remove the deed and the mother would put it into the pocket of another dress. Sometime after the alteration, David was heard to say to Casba, that the land belonged to her, and that she could get another deed from Jester whenever the roads became good, but she never was able to go. Jester lived within about five miles (from what place or persons was not stated) for nine years, but no one ever asked him to make another deed, and he heard nothing

more about the transaction. Casba would never permit the deed to be recorded. She wished to make a will, giving the land to her children, six of whom survived her, but her husband refused to let any one come to the house to make it. After her death David got the deed and had it recorded. It was recorded June 5th, 1871. On the 2d of October, 1871, four of the children of said David and Casba, being all their children except the appellees, having executed quitclaim deeds for said land to said David, which had been recorded, said David sold, and by warranty deed conveyed the land to James Lynas for its full value. Lynas sold and conveyed and warranted it to the appellant December 23d, 1876, for its full value.

There was evidence tending to show that Lynas bought with notice of the claim of the appellees.

There has been some discussion by counsel of the question, whether the evidence showed that the appellant was a purchaser without notice. We think he was shown to be such a purchaser, but, as we regard this as immaterial, we will not set out or discuss the evidence upon this matter.

It does not appear that Jester was consulted about the alteration, or that he said anything on the subject. He was present and knew of the alteration. The deed does not appear to have been in his possession after the insertion of David's name. Jester had no interest in the matter but to receive the consideration. He and his wife had signed and acknowledged the deed with the name of Casba Hatfield therein as sole grantee. She paid the consideration, and was interested in the question of the alteration, which was made by Baldwin at the instigation of David, who afterward seemed to put a construction upon the transaction adverse to himself, as did his wife.

We can not say that there was not evidence from which the jury could find that the alteration of the deed was made after its execution without the consent of the mother of the appellees, and that she and the appellees were guilty of no fraud

or negligence in connection with the alteration or the recording of the deed.

If title pass, though it be obtained by fraud, and the conveyance be, therefore, voidable, one who purchases from the fraudulent grantee in good faith, and for a valuable consideration, and without notice, will be protected; but where the attempt to acquire title wholly fails, and the deed is void, and, therefore, conveys no title to be transmitted, one who purchases from the person named as grantee in such void deed, gets no title to be protected.

There was no agreement with David Hatfield, and no confidence was reposed in him. There was no transfer of title to him, which, in good conscience, he could not hold.

As to the appellees and their mother, the alteration was a spoliation, and did not affect them. 1 Greenl. Ev., sec. 566; *Piersol* v. *Grimes*, 30 Ind. 129; *Bucklen* v. *Huff*, 53 Ind. 474.

The legal title to the real estate in dispute is claimed both by the appellant and the appellees, and the existence of fraud in words or acts, or negligence amounting to fraud, on the part of the appellees or their mother, if provable under the issues, was negatived by the verdict. In such a case, the fact that the appellant purchased in good faith, for a valuable consideration and without notice, can not avail against the appellees. Pomeroy Eq. Jur., sections 735 *et seq.*, 779, 807, 821.

A deed stolen from the grantor, or the delivery of which is obtained from him by fraud, without his knowledge, consent or acquiescence, and without negligence on his part, does not pass the title to the property embraced in it, even as against a subsequent purchaser for value, without notice. Bigelow Fraud, 156, and authorities there cited.

Good faith does not give one who holds under a forged deed any rights as against the person whose name has been forged or his heirs. Such holder can give no rights with or without notice. *Austin* v. *Dean*, 40 Mich. 386.

The recording of a false receipt upon the record of a mort-

gage will not affect the rights of the mortgagee as against a *bona fide* purchaser for value, who relied upon such recorded receipt. *Ramsey* v. *Riley*, 13 Ohio, 157.

In *VanAmringe* v. *Morton*, 4 Whart. 381, a deed with the name of the grantee blank, but acknowledged and otherwise executed except as to its delivery, was surreptitiously taken from the grantor's house, the blank having been filled with a name by an unauthorized person. It was held that no title passed to a subsequent *bona fide* purchaser for a valuable consideration, who purchased from the grantee whose name had been so inserted. The deed was void.

The insertion of the additional name after that of the grantee without her consent and against her expressed wish after its execution, and the unauthorized recording of the altered deed, she and the appellees being guilty of no negligence or fraud of any kind in connection with the alteration or the recording, should not deprive her or her heirs of title under the unaltered deed, or confer any title whatever on the person whose name was so inserted or his grantees.

There is no reason why the appellees should suffer ill consequences from void acts rather than the appellant, with whom they are equally innocent.

It appears that the court instructed the jury, but the instructions are not in the record. In what we have said we have presumed that the court properly instructed as to the law applicable to the case made by the pleadings and the evidence.

It does not appear that the court erred in overruling the motion for a new trial.

The judgment should be affirmed.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment be and it is hereby affirmed, at the costs of the appellant.