## St. Bede College

*v.*

## John Weber, Sr. *et al.*

*Opinion filed November 1, 1897.*

1. BOUNDARIES—*when adjoining owners are estopped to question dividing line.* Owners of adjoining lands who agree upon a dividing line, and take and hold possession of their respective tracts and improve them in accordance with such division, are estopped to deny that the line so agreed upon is the true boundary, even though their rights are not barred by the Statute of Limitations.

2. EJECTMENT—*verdict in ejectment will not be disturbed unless against the evidence.* In the absence of substantial errors in the conduct of the trial a verdict in ejectment will not be disturbed by the Supreme Court, unless clearly against the weight of evidence.

3. INSTRUCTIONS—*correct instruction may be refused the substance of which is embodied in one given.* An instruction stating a correct proposition of law may be refused where its substance is embodied in one already given.

WRIT OF ERROR to the Circuit Court of Bureau county; the Hon. GEORGE W. STIPP, Judge, presiding.

This was an action of ejectment brought in the Bureau circuit court by the St. Bede College, an educational corporation, against John Weber, Jr., and John Weber, Sr., to recover a wedge-shaped strip of land, containing 4.62 acres, part of a farm formerly owned by Daniel Webster. This "Webster farm," as it was called, was purchased in 1871 by Marks, Ward and Mitchell, and was owned by them in common until 1879. About this time they agreed upon a division of the farm and deeds were made accordingly, by which division Marks was to get a strip one hundred rods wide off the east side of the farm, Ward a strip one hundred and five rods wide next adjoining him on the west, and Mitchell the rest. The farm lies in the south half of sections 36 and 35, in township 16, north, and in the north half of sections 1 and 2, in township 15, north, all in range 11, east of the fourth principal meri-

dian, in Bureau county.   The third principal meridian is
the eastern boundary line of Bureau county and also of
this farm.   The Marks land, supposed to consist of two
hundred acres, was bought by Christian Dingler in 1879,
and by him conveyed to Rev. Andrew Hintenach in 1889,
who conveyed it in 1890 to St. Bede College, the plaintiff.
The Ward land, supposed to consist of two hundred and
ten acres, was conveyed to Charles Ward in 1879, and by
him sold to John Weber, Sr., in 1881, who has been in
possession of it by his tenants since then.

About the time of the division of the farm by Marks,
Ward and Mitchell, they had John Gray, then county
surveyor of LaSalle county, but since deceased, make a
survey for them and run the lines dividing the farm.  Divi-
sion fences were then built separating the three tracts
from each other, but it is disputed that the fence between
the first two tracts set off to Marks and Ward, respec-
tively, was on the true line one hundred rods west of
the east line of the farm.   Marks was not present at the
survey nor when the fence was built, but Mitchell repre-
sented him in building the fence, and Marks and Ward
each paid one-half of the cost thereof.   This fence has
been maintained on the same line ever since, the owners
of the Ward land or middle tract keeping up the north
half, and the owners of the Marks land or east tract
keeping up the south half.   The evidence showed that
other surveys were made, the details of which are not
perfectly shown by the evidence, but in 1894 the college,
as the owner of the east tract, caused another survey to
be made by one Irvin, who had been county surveyor of
LaSalle county, to determine the true western boundary
of its land.   By this survey it appeared that the division
fence between its land and the Ward tract, instead of
being on what was deemed the true line,—that is, on a
line parallel with and one hundred rods west of the east
line of the farm,—began at the north end a short distance
west (the exact distance not shown) of the true line and

then ran southerly and somewhat easterly, so that at the south line of the fenced ground it was 1.52 chains east of the true line as established by Irvin, thus leaving a triangular or wedge-shaped piece east of the alleged true line 59.345 chains long, containing 4.62 acres. This triangular piece is the land in controversy in this suit. It appears also that this survey of Irvin was in the main on, but in some places variant from, the lines and corners established some time before by a survey made by one Vandervoort, county surveyor of Bureau county, but the evidence fails to show when or at whose instance such last named survey was made. The division line as established by Irvin ran upwards of two rods nearer appellee's house, cutting off his stable, other out-houses and part of the stock yard.

The court instructed the jury that the deeds, taken alone, showed that the plaintiff was entitled to all that part of the farm which lay east of a line parallel with and one hundred rods west of the meridian line or east line of the farm; and further:

5. "If the preponderance or greater weight of the evidence is that the piece of land described in the plaintiff's declaration lies east of the said parallel line one hundred rods west of the third principal meridian, then the jury must find their verdict for the plaintiff, unless the jury further find that the greater weight or preponderance of the evidence is that there was an agreement between Enoch C. Marks, William Mitchell and Thomas Ward, former owners of both said tracts of land, by which a survey of said lands should be made and the land divided between them; that such survey was made by them; that a line of such survey running north and south near the said parallel line one hundred rods west of the third principal meridian should be the line dividing their lands and bounding the land of said Ward on the east and the land of said Marks on the west; that said Ward and Marks took possession of their several tracts of land in pursu-

ance of said agreement and survey and last mentioned line, and that they erected a division fence on said last mentioned line, and that they and those who have since held under them have used and occupied said adjoining lands and acquiesced in said last mentioned line as the dividing line between the said lands, then said last mentioned line is the lawful line between said lands; and in such case, unless the jury find that the greater weight or preponderance of the evidence is, that the piece of land described in the plaintiff's declaration lies east of such line so agreed upon, used, occupied by and acquiesced in, their verdict must be for the defendant.

6. "Mere acquiescence by the owners and occupiers of the land adjoining the land in dispute, in the use of the disputed land by the defendants and those under whom they hold, in a line between plaintiff's adjoining land as the division line, is not sufficient to establish it as a division line, but the preponderance of the evidence must be that such line was agreed upon as the division line by the then owners of the land, and that they and their successors occupied according to it and acquiesced in it as such division line."

The jury returned a verdict of not guilty, upon which, after overruling the motion for a new trial, judgment was rendered, and from that judgment the plaintiff prosecuted this writ of error.

·Owen G. Lovejoy, and J. C. Coleman, for plaintiff in error.

Alfred R. Greenwood, for defendants in error.

Mr. Justice Carter delivered the opinion of the court:

The only grounds urged for a reversal of this judgment are, that the verdict is against the law and the evidence, and that the court erred in refusing to give an instruction asked by the plaintiff relating to the burden of proof.

The evidence showed that Mitchell, Ward and Marks, joint owners of what was called the "Webster farm," agreed in 1879 upon a division of it among them and that the division lines should be determined by a survey. Marks, who was to get the east tract of two hundred acres, was not present at the survey, but he had authorized Mitchell and Ward to have the survey made. There was a conflict of evidence upon the trial whether in the survey which was made in pursuance of the agreement, the surveyor, Gray, ran any line north and south between the Marks and Ward tracts. He died several years before the trial, but his son testified that he was present and assisted at the survey, and that they ran only one north and south line, and that was between the tracts assigned to Ward and Mitchell; that no line was run between the tracts of Ward and Marks. Ward, on the other hand, testified that he was present and that Gray did run and establish the line between his tract and Mark's tract. Gray's field notes, accompanied by his plat of the survey made at the time, were given in evidence by the plaintiff. These notes do not show that any more than one line was run north and south, and that was between the Mitchell and Ward tracts. They show that a stake was driven on the north line of the farm twenty-five chains west of its east line, where the first north and south line should have terminated at the north, but do not show that any such line was established or that the south end thereof was located by the surveyor. The plat, however, as drawn by the surveyor, does show this line. The evidence on the part of the defendants tended to show, also, that by agreement among Mitchell, Ward and Marks a division fence was built, and, as claimed by defendants, on this line of Gray's survey, as the division line between the tracts of Marks and Ward, Mitchell representing Marks, by the latter's authority, in the location and construction of the fence, and that Marks paid his proportion of the cost. This fence has ever since remained on the same

line and has been kept up as a division fence by the own-
ers of the two tracts.   But whether this division line was
established by the surveyor or not, it was a question for
the jury to find, from the evidence, whether or not it had
been agreed upon among the owners of the two tracts
as the dividing line between them, and whether or not,
in pursuance of such agreement, they entered into and
retained possession each of his own tract as.bounded at
that line by this fence.

It has been held in many cases that where owners of
adjoining lands agree upon the dividing line, take and
hold possession of their respective tracts and improve
the same in accordance with such division, each party
will be estopped from afterwards asserting that the line
so agreed upon is not the true line, although a sufficient
time has not elapsed to raise the bar of the Statute of
Limitations.   *Bauer* v. *Gottmanhausen*, 65 Ill. 499; *Smith* v.
*Hamilton*, 20 Mich. 433; *Crowell* v. *Maughs*, 2 Gilm. 419; *Grim*
v. *Murphy*, 110 Ill. 271; *Cutler* v. *Callison*, 72 id. 113; *Yates*
v. *Shaw*, 24 id. 368; *City of Bloomington* v. *Cemetery Ass.* 126
id. 221; *Sheets* v. *Sweeney*, 136 id. 336; *Mullaney* v. *Duffy*, 145
id. 559; *Berghoefer* v. *Frazier*, 150 id. 577.

In the case at bar the court instructed the jury that
mere acquiescence in the location of this alleged division
line was not sufficient to establish it as the division line,
but that the preponderance of the evidence must show
that such line was agreed upon by the then owners of the
land, and that they and their successors occupied accord-
ing to it and acquiesced in it as such division line.  While
there is room for argument upon the question of fact as
to whether or not there was such alleged agreement, we
cannot say that the jury were not authorized to find as
they did, and we cannot see that they were misled to the
prejudice of the plaintiff by the instructions.

An instruction was asked by plaintiff. which among
other things would have told the jury that the burden of
proof was on the defendants to show that Marks agreed

that the fence built between his and Ward's tracts should be considered as the true line. This was a correct proposition of law, but it was in substance contained in the instructions given.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*