BERCOT ET AL. *v.* VELKOFF.

[No. 16,577. Filed May 8, 1942.]

*G. Kenneth Hubbard* and *Wood & Wood,* all of Angola, for appellants.

*Orville Stevens* and *H. Lyle Shank,* both of Angola, for appellee.

BEDWELL, P. J.—This was an action brought by the appellee, Metodi Velkoff, against the appellants to quiet his title to Lot No. 8 in the replat of the plat of Rosedale, a village which is located on the southwest shore of Lake James in Steuben County, Indiana.

The complaint of appellee alleged, "that he is the owner of the following described real estate in Steuben County and State of Indiana, to-wit: Lot # 8 in the Plat of the Re-plat of Rosedale located in the northwest quarter of section 4, township 37 north range 13 east and more particularly described as follows: . . ." The complaint set forth that the defendants were claiming an interest in said land adverse to plaintiff's title and that the claim of defendants was unfounded and without right and was a cloud upon the plaintiff's title. The prayer was to quiet title as against any and all claims of defendants.

The appellants filed an answer in general denial to this complaint; and the appellants Arthur M. Jersey and Corrine Jersey filed a cross-complaint against the appellee and their codefendants to enjoin the appellee from interfering with or obstructing the use of a right of way or alley which was alleged to exist along the north part of such Lot No. 8 in the plat of the replat of Rosedale.

The issues made upon the complaint and the cross-complaint were submitted to the court for trial and it made a special finding of facts and stated its conclusions of law thereon. These required a judgment for appellee on his complaint and against the two appellants upon their cross-complaint. The appellants, on appeal, first attack the sufficiency of the evidence to sustain the finding of the trial court.

For an understanding of the legal questions presented for determination, we set forth the following facts taken from the record:

In 1915, one Joseph Rose was the owner of certain real estate located upon the southwest shore of Lake James in Steuben County, Indiana, and on March 20, 1915, he made and acknowledged a plat thereof which

he designated by the name of Rosedale. This plat, on March 24, 1915, was duly recorded in Plat Book 2 at page 54 of the records in the office of the recorder of Steuben County, Indiana. The plat consisted of eleven (11) lots numbered from one (1) to eleven (11), both inclusive, and each of a uniform width of fifty (50) feet, but varying in depth. These lots extended west from the southwest shore of the lake to a highway twenty (20) feet wide which was platted adjoining the west boundaries thereof.

In the summer of 1922, Mary E. Metzgar was the owner of the legal title to Lot No. 8 as shown on such plat, and Otis D. Wickerd and his wife, Opal E. Wickerd, were the owners of the legal title to Lots Nos. 7, 9, 10, and 11. Herman H. Hilker owned some interest in the lots where the legal title was in Otis D. Wickerd and wife, but the nature and character of such interest does not appear. During the summer of such year, Mary E. Metzgar, Otis D. Wickerd, Opal E. Wickerd, and Herman H. Hilker orally agreed that a replat of such lots be made. Such replat was prepared by two civil engineers, and on August 12, 1922, it was acknowledged by each of such owners. The statement on such plat is as follows:

"The attached map of the replat of Rosedale is a map of such replat as surveyed and executed by me on the 10th day of July 1922, and is located in the northwest fractional quarter of section 4 in township thirty seven north, range thirteen east in Steuben County, State of Indiana, the north west corner of lot No. 11 being 46.4 feet south east of the northwest corner of the old plat of Rosedale as shown by the respective maps as recorded, the dimensions and lines of the lots of said plat being designated by figures placed along the boundary lines of the lots, and the lots being renumbered to correspond with the changed boundaries.

"Witness my hand this 12th day of August, 1922.
"Otis D. Wickerd                    Herman H. Hilker
"Opal E. Wickerd                   Mary  E.  Metzgar"

Then follows an acknowledgement by each person before a notary public in which they acknowledge the execution of the foregoing and attached replat of Lots Nos. 7, 8, 9, 10, and 11, of the plat of the village of Rosedale. This replat was duly recorded in Plat Book 2 of the records in the office of the recorder of Steuben County, Indiana, on September 6, 1922. By this replat the width of each of the included lots at the west end thereof was reduced from 50 feet to 43.6 feet, but at a point approximately 100 feet east from such west end, the width of each lot was increased from 50 feet to 61.5 feet, and the width of each became greater as each approached the shore of the lake. It is apparent that it was the intention of the lot owners to reduce the width at the west end of the lots, but to increase it where the same abutted upon the lake shore. It is also apparent that this change in the boundary lines of the lots would result in the adding to Lot No. 8, then owned by Mary E. Metzgar, certain land from Lots Nos. 7 and 9 which adjoined on the south and north thereof; also, certain land that was in Lot No. 8 previous to the replatting was taken therefrom and added to the adjoining Lots Nos. 7 and 9. After the replat was made and signed by Mary E. Metzgar, but without her knowledge and before the recording thereof, some unknown person altered the prepared plat so that it appeared that there was an alley 10 feet wide extending along the north side of Lot No. 8 as it appeared on the replat.

No deeds were exchanged between the different owners of such lots in connection with this replatting, and the appellants are contending that the oral agreement and the replatting of these particular lots was not

effective to make Mary E. Metzgar the owner of Lot No. 8 as shown upon the replat; that the only portion thereof she owned so that she could convey by deed was the portion thereof that appeared upon the original plat.

The trial court, evidently from the oral agreement of the adjoining landowners and the making and recording of such replat, determined as a fact that Mary E. Metzgar was the owner of Lot No. 8 of the plat of the replat of Rosedale from August 12, 1922, to April 21, 1925. On the latter date she conveyed by warranty deed to Edward C. Kolb, "Lot numbered eight (8) in the *Recorded plat* of Rosedale, the same plat being a part of the northwest fractional quarter of Section four (4) in township thirty-seven (37) north range thirteen (13) east in said county and State."

The trial court, basing its determination upon the deed containing such a description, found as a fact that Edward C. Kolb was the owner of Lot No. 8 of the *plat of the replat* of Rosedale from April 21, 1925 to June 5, 1936. On June 5, 1936, Edward C. Kolb and wife conveyed to the appellee, by warranty deed; their deed contained the same description as was contained in the deed from Mary E. Metzgar to Edward C. Kolb, and the trial court upon the evidence thereof found as a fact that the appellee, "became the owner in fee simple of lot number eight (8) of the *Plat of the Re-plat of Rose Dale* on June 5, 1936 and is now and has been the owner in fee simple since that time of said lot number eight (8)."

Two legal questions that are presented for determination are as follows:

1. Was the oral agreement entered into between the adjoining landowners who owned Lots Nos. 7, 8, and 9 in the replatted territory, followed by the making and recording of such replat, legally sufficient to change

the boundary lines of Lot No. 8 owned by Mary E. Metzgar in the original plat so that immediately following the making and acknowledgement of such replat she became the owner of all of Lot No. 8 as shown upon such replat so that she could convey the same by warranty deed to Edward C. Kolb, and he could convey the same by warranty deed to appellee, and appellee could obtain a title thereby that he could quiet by his action herein?

2. Was the description, "Lot No. 8 in the recorded plat of Rosedale," sufficient to pass title to "Lot No. 8 in the recorded plat of the replat of Rosedale"?

It is a rule of law so well established that it has become axiomatic, that in suits to quiet title, the plaintiff must recover, if at all, on the strength of his own title. The evidence must show title in the plaintiff; it is not sufficient that it show that the adverse claimant is without title. *Cozy Home Realty Co.* v. *Ralston, Rec.* (1938), 214 Ind. 149, 14 N. E. (2d) 917; *Willard* v. *Bringolf* (1936), 103 Ind. App. 16, 28, 5 N. E. (2d) 315.

In this particular action the complaint of plaintiff specifically described the real estate that was within the boundaries of Lot No. 8 as replatted. The only allegation concerning the nature of the title of appellee therein was an allegation that he was "the owner" of the particular real estate. The complaint does not allege that he was the owner in fee simple nor does it allege that he was the owner of the equitable title. In an action to quiet title, where the plaintiff specifically describes the title upon which he relies, his recovery must be upon the title as laid. *Ault* v. *Miller* (1932), 203 Ind. 487, 181 N. E. 35; *Danforth* v. *Meeks* (1911), 176 Ind. 400, 96 N. E. 153;

*Kozanjieff* v. *Petroff* (1939), 215 Ind. 286, 19 N. E. (2d) 563, 122 A. L. R. 479.

It is provided by statute that: "Conveyances of land or of any interest therein, shall be by deed in writing, subscribed, sealed and duly acknowledged by the grantor or by his attorney, except bona fide leases for a term not exceeding three (3) years." § 56-103, Burns 1933.

In order that an instrument purporting to convey title to land or an interest or estate in land may be valid as a deed and operative to pass such title to or interest in land, it is essential that there be a grantor, a grantee, and a thing granted, and that it convey a present interest or estate. It is further necessary that the instrument be signed by the grantor, or some one whom he directs to sign for him, or his authorized agent, be attested and acknowledged in conformity to the local statutory requirements, and delivered by the grantor to the grantee or to some one in his behalf and accepted by the grantee. 16 Am. Jur.; Deeds, § 20, p. 448.

In the case of *Hummelman* v. *Mounts* (1882), 87 Ind. 178, 179, in discussing the sufficiency of a particular written instrument to effect a conveyance of land, the Supreme Court says:

> "It is no doubt true that an instrument purporting to be a deed will be effectual if it contains in any part apt words of conveyance. . . . While it is true that if in any part of the instrument apt words of conveyance are used the instrument will be treated as a deed, it is also true that if no such words can be found in any part it will be deemed utterly devoid of force."

A deed must contain words of grant, release, or transfer, showing intent to actually transfer grantor's

interest in order to pass title and be valid. ■ *Legout* v. *Price* (1925), 318 Ill. 425, 149 N. E. 427. See, also, *Pierson* v. *Doe* (1850), 2 Ind. 123; *Davis* v. *Davis* (1873), 43 Ind. 561; *Murrer* v. *Murrer* (1939), 106 Ind. App. 304, 19 N. E. (2d) 494.

But appellee contends that the oral agreement for the replatting of a portion of the recorded plat and the signing of the replat by the adjoining landowners was legally effective to pass title to Mary E. Metzgar of the additional real estate that came within the boundaries of Lot No. 8 as replatted, under the principles of law applicable to the establishment of boundary lines by adjoining landowners. He in particular relies upon the case of *Adams* v. *Betz* (1906), 167 Ind. 161, 169, 78 N. E. 649, where the Supreme Court says:

"As a general rule, it is affirmed by the authorities that where owners of adjoining premises establish by agreement a boundary or dividing line between their lands, take and hold possession of their respective tracts, and improve the same in accordance with such division, each party in the absence of fraud, will thereafter be estopped from asserting that the line so agreed upon and established is not the true boundary line, although the period of time which has elapsed since such line was established and possession taken is less than the statutory period of limitation. 1 Cyc. Law and Proc., 1036; 5 Cyc. Law and Proc., 930-935; *St. Bede College* v. *Weber* (1897), 168 Ill. 324, 48 N. E. 165; *Tate* v. *Foshee* (1889), 117 Ind. 322; *Pitcher* v. *Dove* (1885), 99 Ind. 175, and authorities cited; *Meyers* v. *Johnson* (1860), 15 Ind. 261. The general rule recognized by the authorities is that a boundary line located under such circumstances, in the absence of fraud, becomes binding on the owners establishing it; not on the principle that the title to the lands can be passed by parol, but for the reason that such owners have agreed permanently upon the limits of their respective premises, and have acted in respect to such line, and

have been controlled thereby, and, therefore, will not thereafter be permitted to repudiate their acts."

In the particular case from which we quote and where the above stated principle was applied, there was dispute or uncertainty between the adjoining landowners as to the proper location of the boundary line. It is a well-established rule, that one of the requisites necessary to the establishment of a boundary line other than the true boundary line, between adjoining landowners, by oral agreement, in the absence of adverse possession or estoppel, is that the location of the true boundary sought to be thus established is or has been uncertain and in dispute. *Robinson* v. *Gaylord* (1930), 182 Ark. 849, 33 S. W. (2d) 710; *Roberts* v. *Brae* (1936), 5 Cal. (2d), 356, 54 P. (2d) 698; *Jones* v. *Scott* (1924), 314 Ill. 118, 145 N. E. 378; *Peterson* v. *Hollis* (1913), 90 Kan. 655, 136 P. 258; *Moran* v. *Choate* (1934), 253 Ky. 470, 69 S. W. (2d) 994; *Blank* v. *Ambs* (1932), 260 Mich. 589, 245 N. W. 525; *Barnes* v. *Allison* (1901), 166 Mo. 96, 65 S. W. 781. For additional citations in above and other states see annotation in 69 A. L. R. 1443 and in 113 A. L. R. 425.

The reason usually given by the courts in denying the effectiveness of a parol agreement for the establishment of a boundary line where the same is neither disputed, indefinite or uncertain, is that such an agreement is within the statute of frauds. In the case of *Lewis* v. *Ogram* (1906), 149 Cal. 505, 508, 87 P. 60, 10 L. R. A. (N. S.) 610, 117 Am. St. Rep. 151, the court, in discussing an agreement which purported to fix a boundary between adjoining parcels of land, said:

"Such an agreement, necessarily, is not valid for any other purpose than that of settling an uncer-

tainty in regard to the common boundary. If adjoining owners agree on a division line, knowing that it is not the true line, and with a purpose of thereby transferring from one of them to the other a body of land which they know his true line does not embrace, the agreement will not be enforced. Such a transaction would not constitute an adjustment of uncertainties or doubts as to the line, but would be an attempt to convey or release land from one to the other. Land cannot be conveyed by the devise of moving fences or changing the marks or monuments which define its limits. If an agreement having for its real object the transfer of the land, but relating by its terms solely to the boundary line, and made with knowledge that the true line is elsewhere than at the place fixed, is oral, it would be void, being an attempt to transfer land without writing."

Logically, the same result must follow if instead of an oral agreement we have a written agreement which is insufficient under the laws of the particular state, where the real estate is located, to pass title.

We know of no precedent where adjoining owners of real estate have successfully exchanged portions of their respective holdings by the making and recording of a plat instead of by executing deeds of conveyance. The statutory method of conveying real estate is by deed of conveyance. It is true that a parol partition of land which has been consummated by severance of the lands, and by the parties to the agreement taking possession, is valid and will be enforced. *Murray* v. *Murray* (1916), 62 Ind. App. 132, 112 N. E. 835; *Wright, Administrator* v. *Jones* (1886), 105 Ind. 17, 4 N. E. 281. But where there is no tenancy in common or community of interest in the property it cannot be partitioned. *Anderson School Township* v. *Milroy Lodge F. & A. M., No. 139* (1891), 130 Ind. 108, 29 N. E. 411, 30 Am. St. Rep. 206.

While it may seem harsh, in this particular instance, to hold noneffective the acts of the owners of the particular lots in causing the replat to be made and the boundaries thereof to be changed, in view of the fact, that as far as the record shows, such replatting was mutually agreeable and all of the adjoining owners acquiesced therein, we do not have here involved a case where the principles of equitable estoppel can be applied. The case was not tried upon that theory in the court below. No facts were found concerning the taking of possession, the making of improvements or acquiescence in an agreed boundary line, which matters would have had force in determining whether an estoppel arose. The appellee herein, by his proof, relied upon the establishment of a legal title and the trial court found that he became the owner in fee simple of the real estate described in his complaint upon the date that he received the deed therefor from Edward C. Kolb and wife.

The trial court also found that Mary E. Metzgar was the owner of Lot No. 8 of the plat *of the replat* of Rosedale from August 12, 1922 to April 21, 1925. It was on the latter date that she deeded the same to Edward C. Kolb. This particular finding means that the trial court found that Mary E. Metzgar became the owner of Lot No. 8 in the replat of Rosedale, not because she had taken possession thereof and had made improvements thereon, or had occupied to the new lines fixed by such replat, but that she became the owner thereof immediately following the signing and acknowledgement of the replat. In other words, the legal effect of the finding of facts by the trial court is that the replatting by the landowners was legally effective to convey real estate so that after the making and acknowledgement of such replat, the landowners owned

all the real estate in their particular lots as the same were designated upon the replat. We are not holding that it was not possible for Mary E. Metzgar and her immediate and remote grantees to become the owner of Lot No. 8 as shown upon the replat of Rosedale without the execution of deeds of conveyance by adjoining landowners.

No question is here presented concerning acquiescence in an agreed boundary line for a long period of time or for the time fixed by the statute of limitations, nor is any question presented concerning the fixing of the boundary lines of the lots by agreement followed by occupation and use, and the making of improvements under such conditions and circumstances, that an estoppel has arisen. Such was the situation in *Tate* v. *Foshee* (1889), 117 Ind. 322, 20 N. E. 241, to which appellee has called our attention. It does not appear from the opinion of the court in such case whether there was any dispute, doubt, or uncertainty between the adjoining landowners as to the lines of their respective lots, which they agreed to rectify and straighten. Nor do we believe that the court held or intended to hold that there could be a valid parol partition of real estate by adjoining landowners where there was no tenancy in common or community of interest. The same judge that wrote the opinion in *Tate* v. *Foshee, supra,* also wrote the opinion in *Anderson School Township* v. *Milroy Lodge F. & A. M., No. 139, supra,* in which he says at p. 108: "As each party owns its part of the property in severalty, it is legally impossible that partition can be awarded, for there is no community of interest."

We grant that in our examination of the authorities we have found no case in Indiana which particularly discusses the question of whether a boundary line,

other than the true boundary line, may be permanently and irrevocably established by the parol agreement of the adjoining owners, in the absence of adverse possession or estoppel, where there is no doubt, dispute, or uncertainty concerning the location of the true boundary line. But, seemingly, without conflict, the decisions in other jurisdictions set forth the existence of dispute, doubt, or uncertainty as one of the requisites for the establishment of boundary lines in such cases. For a discussion of authorities we call attention to the following annotations: 69 A. L. R. 1430; 113 A. L. R. 421.

We hold that the evidence is insufficient to sustain the finding of the trial court, that appellee was the owner in fee simple of Lot No. 8 in the replat of the plat of Rosedale.

We have carefully considered the evidence that was introduced upon the issues made upon the cross-complaint and we are of the opinion that it was sufficient to sustain the special finding of the court in as far as it determined the facts upon such issues. The appellants do not attack the sufficiency of the finding to sustain the conclusion of law in favor of the appellee, upon the cross-complaint. One of the civil engineers who drew the replat of Rosedale testified that all the lines, printing, and figures upon the replat when it was completed, but before the signing thereof, were in green ink; but the evidence showed that the alley which cross-complainants alleged existed along the north part of Lot No. 8, was marked upon such replat in black ink and with different lettering. The evidence also showed that this alley was not drawn to scale while the original plat was. Mary E. Metzgar testified that there was no provision for an alley across Lot No. 8 when she signed the replat. The court in its

special finding found that there had been an alteration of the replat by some unknown person after the execution but before the recording thereof, and that, by such alteration, words, figures, and a line were inserted thereon to show the existence of an alley 10 feet wide off the north side of such Lot No. 8, and that this alteration was made without the knowledge or consent of Mary E. Metzgar.

Any erasure, interlineation, or change, however material, which is made in and upon an instrument by a stranger to it, who is acting without privity or the consent of the parties interested therein, is a mere spoliation, as distinguished from an alteration, and is in legal contemplation wholly immaterial and ineffective to give to the instrument any other or different meaning or operation from that which attached to it before such change was effected. Such a change cannot enlarge the obligations of the parties thereto, nor, at least where its original terms are still ascertainable, effect the right of the parties to enforce the instrument as it was originally written; and a recovery is allowed thereon the same as if no change had occurred in it. 3 C. J. S., Alteration of Instruments, § 53, p. 969; *Piersol* v. *Grimes* (1868), 30 Ind. 129; *John* v. *Hatfield* (1882), 84 Ind. 75, 82; *Wright, Rec.* v. *O'Brien* (1918), 67 Ind. App. 521, 119 N. E. 469; *Hageman* v. *Fetty* (1937), 103 Ind. App. 291, 7 N. E. (2d) 518.

In the case of *John* v. *Hatfield, supra,* the Supreme Court held that the insertion in a deed of an additional name after that of the grantee, without her consent, fraud or negligence, and after its execution, but before its unauthorized recording, did not deprive the grantee or her heirs of title under the unaltered deed, or confer any title whatever upon the person whose name was so

inserted or his innocent remote grantee. The court said: "There is no reason why the appellees should suffer ill consequences from void acts rather than the appellant, with whom they are equally innocent."

The evidence was such that the trial court could find that the replat was altered or changed so as to show the existence of an alley extending along the north part of Lot No. 8 after Mary E. Metzgar had signed and acknowledged such plat, and that such alteration or change was made without the knowledge, fraud or negligence of Mary E. Metzgar.

Under the rules of law heretofore set forth, this alteration was a mere spoliation which did not affect Mary E. Metzgar or the rights of her immediate or remote grantees, nor could the cross-complaint establish the existence of an alley growing out of such void act. The record does not validate an invalid instrument. *New England Bond & Mortgage Co.* v. *Brock* (1930), 270 Mass. 107, 169 N. E. 803, 68 A. L. R. 371.

It seems to us that the position assumed by appellants concerning the action upon the complaint and the action upon the cross-complaint is somewhat inconsistent. In the action upon the complaint they contend that appellee never became the owner of Lot No. 8 as shown upon the replat and that the replatting was not legally effective to establish boundary lines between adjoining lot owners. In the action upon the cross-complaint they contend that the replatting was effective to establish an alley that is drawn with reference to the north boundary line of Lot No. 8 as replatted; and they further contend that the appellee became the owner of such lot with knowledge that it was burdened with an alley 10 feet wide along the north side thereof.

We hold that the trial court did not err in its fourth

conclusion of law and that the evidence was sufficient to sustain its finding of fact in as far as such finding bore upon the issues made upon the cross-complaint.

On October 9, 1937, and more than fifteen years after the replat of Rosedale was recorded, the surveyor of Steuben County entered upon the record of such replat, where it appeared on the plat book in the office of the recorder of such county, his certificate which recites, among other things, that he made his legal survey of the replat and, "that no provision was made for any alley in the replat and that no alley exists." When the appellee offered to introduce as evidence the page of the plat book showing such replat, the appellants objected to that portion which purported to be the certificate of such surveyor, and they urge here that the trial court erred in admitting it. Granting that such certificate of the county surveyor was not competent evidence to establish the nonexistence of the alley, we do not believe that the appellants show reversible error growing out of the introduction of the same into evidence. Other evidence established, without contradiction, the nonexistence of this alley when the replat was signed and acknowledged by Mary E. Metzgar, and this certificate was merely cumulative evidence. The admission of improper evidence is harmless when the fact thereby sought to be shown is clearly established by other evidence which is competent. *Keener School Township* v. *Eudaly* (1932), 93 Ind. App. 627, 639, 175 N. E. 363; *Indianapolis St. R. Co.* v. *Schmidt* (1904), 163 Ind. 360, 71 N. E. 201.

When Mary E. Metzgar was testifying as a witness, she was asked the following question concerning the replat when she signed it:

Q. "Was there any provision for an alley across Lot 8 at that time?"

She answered, "No." Appellants are objecting to the action of the trial court in permitting such question and answer upon the ground that the question called for a conclusion. We think the question called for a fact.

Appellants also object because the trial court permitted the appellee to testify orally that he was the owner of certain real estate that was described in the question. The real estate included in the question was the real estate described in his complaint. The question of title to real estate was here at issue and whether the appellee was the owner of the real estate described in his complaint was one of the ultimate matters to be determined by the trial court from all the evidentiary facts. We are of the opinion that such a question propounded to a witness under such circumstances calls for a conclusion and should not be permitted by the trial court. 20 Am. Jur., Evidence, § 772, p. 644; *Kirkpatrick* v. *Clark* (1890), 132 Ill. 342, 24 N. E. 71, 8 L. R. A. 511.

The witness, Don Gilbert, the county surveyor of Steuben County, was asked the following question concerning a survey of the replat made by him:

Q. "I will ask you, Mr. Gilbert, if you found an alley?"

He answered, "No." Appellants claim that the trial court erred by permitting such question over their objection because it called for a conclusion. We think this question called for a fact and not a conclusion.

The judgment is reversed in as far as it determines the issues made upon the complaint of appellee, but affirmed in as far as it determines the issues made upon the cross-complaint of Arthur M. Jersey and Corrine Jersey, and cause is remanded to the trial court with

directions to grant the appellants a new trial as to the issues made upon the complaint, but not as to the issues made upon the cross-complaint, and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 41 N. E. (2d) 686.