PATE ET AL. *v.* THE FIRST NATIONAL BANK OF AURORA.

PROMISSORY NOTE PAYABLE IN BANK.—*Foreclosure of Mortgage.—Misjoinder of Actions or Parties.—Supreme Court.*—Complaint by an assignee, against the maker and assignor, upon a promissory note payable in bank, and to foreclose a mortgage executed by the assignor, to the assignee, to secure payment of the note.

*Held,* that there was no misjoinder of parties defendants, nor of causes of action.

*Held,* also, that the Supreme Court will not reverse a judgment for misjoinder of causes of action.

SAME.—*Non Est Factum.—Burden of Proof.—Open and Close.*—Where the execution of a promissory note in suit is denied under oath, the burden of proof is on the plaintiff, and he has the right to the open and close.

SAME.—*Putting Note in Evidence.*—The note in such case should be admitted in evidence, on behalf of the plaintiff, upon his introducing any evidence however slight, of its execution ; and the defendant has no right to introduce evidence denying its execution, until the plaintiff has concluded his evidence in chief.

SAME.—*Rebuttal.*—The plaintiff in such case has the right to the close, upon the conclusion of the defendant's evidence, though his rebutting evidence may include a portion of his evidence already given in chief.

SAME.—*Rebutting Evidence.*—The defendant in such case can not complain of the introduction, by the plaintiff, of new matter, in rebuttal, where he himself is, in turn, allowed to rebut such new matter.

SAME.—*Putting Mortgage in Evidence.*—In an action by an assignee, against the maker and assignor, on a promissory note, and to foreclose a mortgage executed by the assignor, to secure payment of the note, the plaintiff has a right to introduce the mortgage in evidence, though the mortgagor has made default, and the maker only, under a denial of the execution of the note, is contesting the action.

SAME.—*Principal and Agent.*—*Execution of Promissory Note by one, in Name of another.*—*Instruction.*—In an action against A., on a promissory note executed by B. in the name of himself and A., in renewal of a prior joint note executed by them, the court instructed the jury, that if from the evidence, they believed that A. and B. had been carrying the note alleged to have been renewed, and that A. had informed the payee's agent, that, if it became necessary to renew the note, B. had authority to execute the renewal in the name of both A.andB., and that the note in suit had been so executed prior to any revocation of such authority, A. was bound thereby.

*Held,* on evidence tending to show such a state of facts, that the instruction is correct.

SAME.—*Harmless Refusal of Instruction.*—Where the substance of an instruction refused is embraced in one given, such refusal is harmless.

From the Decatur Circuit Court.

*E. P. Ferris* and *W. W. Spencer,* for appellants.

*H. D. McMullen, R. Gregg, J. A. Parks, A. C. Downey* and *H. S. Downey,* for appellee.

NIBLACK, J.—This was an action by the First National Bank of Aurora, against Michael Geigoldt, James W. Pate and Peter S. Pate, administrator of the estate of John Pate, deceased, on a promissory note, as follows :

"$2,000.00.          AURORA, Indiana, Dec. 28th, 1873.

"Four months after date, we promise to pay to the order of Michael Geigoldt two thousand dollars, with interest at ten per cent. per annum after maturity, and attorney's fees if suit be instituted on this note, value received, without any relief whatever from valuation or appraisement laws. The drawers and endorsers severally waive presentment for payment, protest, notice of protest and non-payment of this note. Negotiable and payable at the First National Bank of Aurora.

"JOHN PATE,

"JAMES W. PATE."

Endorsed : "MICHAEL GEIGOLDT."

And against the said Michael Geigoldt and Catharine Geigoldt, his wife, to foreclose a mortgage executed by them, to said bank, to secure the payment of said note.

The defendant James W. Pate answered denying the execution of the note under oath, but the other defendants made no defence.

A jury was empanelled to try the issue thus formed by the answer of James W. Pate.

Elam H. Davis, the plaintiff's cashier, was then introduced as a witness, and testified to the court concerning the execution of the note in suit. His testimony can, we think, be fairly transposed and condensed into a statement, substantially as follows :

"I became cashier of the plaintiff, January 12th, 1869. When I became cashier, there was a note in the bank for $2,000.00, executed by John Pate. The note sued on was negotiated while I was cashier. John Pate signed James W. Pate's name to it. James W. Pate told me that John Pate, who was his brother, was authorized to sign his name to the note. The note in suit was in renewal of the other paper that was in bank. The first time there was a renewal after I

Pate *et al. v.* The First National Bank of Aurora.

became cashier, John Pate came to the bank and made up a paper, similar to the note in suit, with James W. Pate's name signed to it, and offered it in renewal of the note then in bank. I declined to take the paper thus offered. In a day or two afterward, John Pate and James W. Pate came to the bank together, and a new note was then drawn up and signed by both of them. James then stated to me that he lived seventeen or eighteen miles in the country, and that it was not always convenient for him to be there when the paper they were renewing became due, and that he wished me to understand, that if, at any time when this became due, he was not there, his brother John was authorized to sign his name to a renewal. The paper was renewed from time to time, until the date of the note sued on, and it was signed, with that understanding, by John Pate. Nothing was said as to the time the note was to run at the time of the renewal above referred to."

The defendant James W. Pate then offered himself as a witness, to show to the court, that no such conversation between him and Davis, as that testified to by Davis, had ever occurred, but the court refused to hear the evidence thus offered by the said Pate, and, over his objection, permitted the note in suit to be read to the jury.

The mortgage accompanying the complaint was thereupon read in evidence, over the further objection of the said James W. Pate, and, after some further testimony as to the value of the attorney's fee provided for in the note, the plaintiff rested."

James W. Pate then offered himself as a witness in his own behalf, and testified that he did not sign the note in suit, and never authorized any one else to sign his name to that note ; that, at the time of the earlier renewals of the original note, he and his brother John were partners, but that they had ceased to be partners before the note sued on was executed, of which latter fact Davis had been

informed, and, after some further testimony as to the cir-
cumstances under which the last named note was executed,
also rested.

Over the objection of the defendant James W. Pate,
upon the ground that the evidence was closed, the plain-
tiff recalled Davis, its cashier, who, in his testimony to the
jury, repeated, substantially, what he had said in the
first instance to the court, but in a somewhat different or-
der and with some additional details, and, after some fur-
ther testimony, again rested.

The said James W. Pate again took the stand as a wit-
ness in his own behalf, and testified in rebuttal of the evi-
dence introduced as above by the plaintiff, and, by the
testimony of other witnesses, in further rebuttal, closed the
evidence in the case.

Upon the evidence thus submitted, the jury returned a
verdict for the plaintiff, assessing its damages at the
amount of the note, with interest and attorney's fees, and,
over a motion for a new trial, the court rendered a judg-
ment against the makers and the endorser of the note, for
the amount found due upon it, and entered a decree of
foreclosure against Michael Geigoldt and his wife, upon
the mortgage executed by them to secure the payment of
the note.

Errors are assigned in such a way as to raise the several
questions, which we proceed to consider.

It is first objected, that there was a misjoinder of
causes of action.

The note in suit was governed by the law merchant,
and all the parties liable upon it were properly joined in
the same action. See act concerning promissory notes, 1
R. S. 1876, pp. 636, 637, secs. 6 and 16.

As the mortgage was but incidental to, and only given
to secure the payment of, the note, it was properly fore-
closed as a part of the proceedings for the collection of the

note. But, if there had been a misjoinder of causes of action, we could not, for that reason, reverse the judgment. 2 R. S. 1876, p. 59, sec. 52.

It is also objected, that the court erred in hearing evidence from the plaintiff, as to the execution of the note, after the jury were sworn, and in refusing to hear the evidence offered by the said James W. Pate, in defence of the plaintiff's evidence, before the note was read to the jury.

We understand the rule to be, that, where the execution of a note or other similar instrument in writing, sued on, is denied under oath, and no evidence of the authenticity of such note or other instrument is given, it can not be read to the jury, but that, where evidence addressed to the court is adduced, making out a *prima facie* case of the authenticity of such note or other instrument, or reasonably tending, even slightly, to prove the formal execution of it, such evidence is sufficient to entitle such note or other instrument to go to the jury. 2 Greenl. Ev., sec. 294; 2 Phil. Ev., 5th Am. ed., p. 502, top page, 423; *Carter* v. *Pomeroy*, 30 Ind. 438.

Where there has been sufficient evidence addressed to the court to entitle the note or other instrument to be read in evidence, the court is not to allow the other party to adduce counter proof before it is read to the jury, and thus assume to take the question of the execution of such note or other instrument from the jury. 2 Phil. Ev. *supra; Fisher* v. *Kean,* 1 Watts, 278.

Where a note or other similar instrument, the execution of which is denied under oath, is read to the jury, the question of its authenticity must then be decided by the jury, as in other similar cases.

It is further objected, that the court erred in permitting the plaintiff to introduce evidence to the jury, after the note had been read in evidence, and after the defendant James W. Pate had been heard by the jury and rested.

The proper course of proceeding, in a case like this, after the note has been read to the jury, has never, so far as we are advised, been definitely ruled upon by this court, and presents a question of practice not well defined by any of the authorities which have fallen under our observation. But, as the plaintiff has the burden of the issue, we are of the opinion that he is entitled to go to the jury with his evidence in chief when the note is read to them, and to close the evidence with his rebutting testimony, or that he may rest when the note is read to the jury, and reserve his right to be further heard in rebuttal of the defendant's testimony, subject, of course, in each case, to the proper discretion of the court in permitting new matter to be replied to, and as to the order in which the evidence of each party may be introduced, as in other similar cases.

In the case at bar, the defendant James W. Pate both opened and closed the evidence, after the note was read to the jury. We see nothing, therefore, in the order in which the evidence went to the jury, of which he, as the defendant in the issue, had any just reason to complain.

It is also further objected, that the court erred in permitting the mortgage filed with the complaint to be read in evidence, as its reading tended to the prejudice of James W. Pate in the trial of the issue formed by him with the plaintiff, but we can not see on what principle this objection can be sustained. It was proper evidence against the defendants Geigoldt and wife, under the averments of the complaint for the foreclosure of such mortgage, and for that reason it was, at all events, rightfully put in evidence as against them. We can not perceive how its reading did James W. Pate any injury, even if its introduction had been unnecessary.

Amongst the instructions given by the court, on its own motion, was the following:

" If you find, from the testimony, that John Pate, in his

lifetime, and James W. Pate, the defendant, were carrying a two-thousand-dollar note in the First National Bank of Aurora, Indiana, and that James W. Pate informed Mr. Davis, the cashier of the bank, that, if it should become necessary to renew said note, John Pate had authority to sign his, James W.'s, name in the renewal of the same, and James W. did not, prior to the execution of the note in suit, notify the bank that such authority was revoked, and the note in suit was a renewal of said two-thousand-dollar note, and John Pate signed the name of James W. to the same, you will find for the plaintiff as against James W. Pate."

It is contended that this instruction was erroneous, because it authorized the jury to give a broader construction to the authority of John Pate to use the name of James W. Pate than was justified by the evidence, and because it ignored the existence of certain facts tending to show a revocation of John Pate's authority to sign the name of James W. Pate, before he attempted the execution of the note in suit.

We do not, however, see any objection to this instruction. It seems to us to have presented a fair summary of what it was incumbent on the plaintiff to show, under the evidence, to make out a case against James W. Pate, without indicating what any particular portion of the evidence either tended to prove or disprove, regarding what was necessary to be shown. That appears to us to have been entirely proper.

The court refused to give several instructions prayed for by James W. Pate, and complaint is made here of such refusal.

All the material matters embraced in the instructions prayed for and refused were, we think, fully covered by the instructions given by the court. A considerable portion of the series of instructions refused was devoted to a defini-

tion of the various differences between general and special agents, as defined in the case of *Cruzan* v. *Smith*, 41 Ind. 288, and other authorities on the subject of agencies, but we do not regard the abstract definitions contended for by counsel as having been calculated to throw any additional light upon the case before us.

The instructions given by the court plainly put it to the jury to say whether, under the evidence, John Pate was authorized to sign the name of James W. Pate to the note sued upon, and that was sufficient to direct the minds of the jury to the real and, indeed, only matter in issue on the trial. Nothing further was required as regards the alleged agency of John Pate in the premises.

Some other questions upon the evidence are discussed by counsel, but they are either subordinate or collateral to some of the questions we have already considered, and we do not deem it necessary to further extend this opinion, by attempting a review of such merely incidental questions.

We see no cause for a reversal of the judgment

The judgment is affirmed, at the costs of the appellant.