McGUIRE v. INDIANAPOLIS BROADCASTING, INC., ET AL.

[No. 28,095. Filed June 20, 1945. Rehearing denied September 25, 1945.]

*Charles E. McGuire, pro se,* of Chicago, Illinois, and *Willis Hickam,* of Spencer, for appellant.

*Emison & Emison,* of Vincennes, and *McHale, Arthur, Myers & Patrick,* of Indianapolis, for appellees.

O'MALLEY, J.—The appellant, as intervenor and substituted plaintiff, brought suit against the appellees on a promissory note in the sum of $15,000.00. There was a plea of *"non est factum,"* and five other affirmative answers.

The evidence shows the note was drawn and signed by the officers of the appellee corporations under circumstances hereinafter set forth. It is disclosed by the evidence that in October, 1936, Central Newspapers, Inc., by and through its majority stockholder, Eugene C. Pulliam, entered into two written contracts for the purchase of appellee corporations, the same to be accomplished by the transfer of all the stock to the buyer; that at the time of the execution of the contracts, Central Newspapers, Inc., paid the sum of $10,000.00 to the holders of stock of the appellee corporations; that in said contracts the sellers warranted that the appellees owned radio station WIRE in Indianapolis, together with the real and personal property connected therewith, free and clear of liens; that said radio station was duly licensed; that, during the life of the contracts, nothing was to be done except in the ordinary course of business that would create liability or loss of assets of the corporations.

The evidence further discloses that under the terms of the contracts the Central Newspapers, Inc., paid an additional sum of money totalling $165,000.00 on the 28th day of December, 1936, and received one-third of the stock, although they had paid the one-half of the agreed price. At that time or prior thereto it was agreed that the sale had to be concluded so that all the stock would not be transferred in one year, and on December 28, 1936, the pertinent stock records, minute books, and other books and papers were placed in a vault beyond the control of either the old or the new people; that there were two keys to this vault, each of which was needed for unlocking and these keys were turned over to the attorneys, one for each side; that at that meeting on December 28, 1936, it was determined to meet and close the whole matter on January 2, 1937;

that on the date named all parties were present and when Pulliam for the purchasers offered the balance of the purchase price, the sellers through their attorney, Charles E. McGuire, the appellant herein, first requested that Central Newspapers, Inc., approve in writing the action of the old board of directors of each of appellee corporations in declaring dividends in the total sum of $15,000.00, and in executing a note for that sum to a Chicago bank; that it was there stated that the old boards had met in Indianapolis on December 30, 1936, and declared the dividends; that Pulliam objected to such action and refused to approve the dividends, and thereupon the appellant told him he could either approve that action or the balance of the stock would not be transferred.

The evidence further shows that Pulliam was thus faced with a situation where he could either agree to the dividends and the execution of the note, or he would be unable to meet the requirements of a loan of $375,-000.00, $175,000.00 of which was then in the hands of the old boards, and he would likewise lose all the stock of Central Newspapers, Inc., which had been hypothecated for the loan; that being faced with these facts, he signed as requested. The evidence also shows that the money for the dividend note was obtained from a Chicago bank by the officers of the old boards, but not until one officer of the old boards had guaranteed the loan, and the bank had earmarked $15,000.00 of deposits of another corporation the principal owner of which was that officer.

There are many questions raised in the briefs under the numerous issues submitted to the court. Many of the questions thus raised are very interesting, but if the action of the court in entering a general finding for the appellees was correct under the issue of *"non est*

*factum"* that was tendered, it will be unnecessary to prolong this opinion to answer other questions raised.

The plea of *"non est factum"* placed on the plaintiff the burden of proving by a preponderance of the evidence authority to execute the note. This the appellant attempted to do by the testimony of the witness Edmund J. Haugh. This witness testified as to the meetings of the boards of directors of appellees, which he claimed had been held six years prior thereto. He told the names of those present at the meetings and what was said; that those meetings were held in Indianapolis on December 30, 1936; that the minutes of the meetings were in existence and that the minutes correctly reflected what had taken place; that these minutes had been written two weeks before they were offered at the trial and six years after the meetings to which they referred. The court refused to admit the offered minutes and the witness then stated that at the meetings there were four directors present and that they discussed the matter of dividends, and believed that there were ample earnings from which one could be declared in the sum of $10,000.00 in one corporation and $5,000.00 in the other; that a resolution to pay such dividends was then adopted by each board; that inasmuch as there had been an outlay of money in improving the broadcasting station, there was not sufficient cash on hand to pay the dividends; that it would be necessary to execute a note and borrow the money; that authority was there given for two of the directors to arrange the loan and execute the note.

It was also stated by this witness that the resolutions so adopted were not in writing and that he kept no notes of what transpired at either meeting; that Pulliam was at the radio station while the meetings were in

progress and that he was then informed of the meetings, and the purpose for which they had been called.

Pulliam testified in rebuttal thereto that the witness, Haugh, had never met him at the broadcasting station and had not talked to him or told him the purpose of the meetings of December 30, 1936.

The appellant argues that the evidence of Haugh is undisputed and that the court is bound to find as a matter of law that there were meetings as detailed by the witness and that the note was executed and used pursuant to such authority.

The witness, Haugh, was an interested party who shared in the distribution of the $15,000.00 and his credibility was for the court. *Nat. City Bank* v. *Kirk* (1926), 85 Ind. App. 120, 131, 134 N. E. 772, 776; *Talge Mahogany Co.* v. *Burrows* (1921), 191 Ind. 167, 130 N. E. 865. Furthermore, this witness was contradicted at least in part, and if the court believed the contradicting testimony, then he must have disbelieved that part of the testimony of Haugh which had been contradicted. The judge saw the witness on the stand, observed his manner of testifying and whether he appeared to be telling the truth or otherwise. It may be that the trial judge applied the maxim *"falsus in uno, falsus in omnibus."*

The appellant further argues that because the note was admitted in evidence, he had made a prima facie case and that therefore the court was legally bound to find that it was executed pursuant to authority. He offers no text or citations for this assertion. The rule to which we adhere is well stated in *Pate et al.* v. *The First National Bank of Aurora* (1878), 63 Ind. 254, 259, where this court said:

"We understand the rule to be, that, where the execution of a note or other similar instrument in

writing, sued on, is denied under oath, and no evidence of the authenticity of such note or other instrument is given, it can not be read to the jury, but that, where evidence addressed to the court is adduced, making out a *prima facie* case of the authenticity of such note or other instrument, or reasonably tending, even slightly, to prove the formal execution of it, such evidence is sufficient to entitle such note or other instrument to go to the jury. 2 Greenl. Ev. sec. 294; 2 Phil Ev., 5th Am. ed., p. 502, top page 423; *Carter* v. *Pomeroy*, 30 Ind. 438."

When the execution of a written instrument is denied under oath, the party relying on the instrument has the burden of proof on that issue throughout the trial. *Fudge* v. *Marquell* (1905), 164 Ind. 447, 452, 72 N. E. 565, 567, 73 N. E. 895.

If on considering the evidence on the issue of *"non est factum"* it cannot be said that the evidence is such that it compels but one conclusion, which conclusion is contrary to the decision of the lower court, this case should be affirmed. *Wilson, Admx.* v. *Rollings* (1938), 214 Ind. 155, 14 N. E. (2d) 905, 15 N. E. (2d) 1016.

The evidence on that issue is not such that we are forced to a conclusion different from that reached by the trial court. Since that issue under the general finding of the court must be decided against the appellant, it is not necessary to examine the other questions raised.

The judgment is affirmed.

Note.—Reported in 61 N. E. (2d) 642.