PRINGLE ET AL. *v.* BROADSTREET ET AL.

[No. 29,796. Filed May 19, 1959.]

*Edward D. Lewis,* of Plainfield, *John P. Price, Robert Hollowell* and *Hollowell & Hamill,* all of Indianapolis, for appellants.

*Stevenson, Kendall & Stevenson* and *J. Gordon Gibbs,* both of Danville, for appellees.

JACKSON, J.—This case comes to us on petition to transfer from the Appellate Court under Acts 1933, ch. 151, §1, p. 800, being §4-215, Burns' 1946 Replacement. See: *Pringle* v. *Broadstreet* (1958), 154 N. E. 2d 413, for opinion of the Appellate Court.

The issues involved in this case hinge on the delivery

or nondelivery of a deed from the appellants to the appellees.

It appears from the facts in this case that the parties agreed, orally, to an exchange of certain real estate owned by the parties on December 4, 1954. Appellant, Thomas Lyle Pringle, and Appellees, Wiley Broadstreet and Mary Elizabeth Broadstreet, on said date went to the offices of the Plainfield Building and Loan Association for the purpose of executing their respective deeds to the two properties proposed to be exchanged, Thomas Lyle Pringle executing his deed to the property owned by him and Beatrice C. Pringle as tenants by the entireties, and Wiley Broadstreet and Mary Elizabeth Broadstreet executing a deed to their property. On the following Monday, December 6, 1954, Beatrice C. Pringle in company with Mr. Broadstreet went to the office of said Building and Loan Association and there executed the deed previously signed by her husband. Thereafter appellants brought suit to cancel and set aside the deed they had executed on December 4th and December 6th, 1954, alleging no delivery of their deed; to this complaint appellees filed a pleading denominated a "cross-complaint," in two paragraphs, and their answer in denial to the complaint. Paragraph one of their cross-complaint prays judgment against the plaintiffs for possession of the real estate described in the complaint, for $2,500 damages for unlawful detention thereof, costs of the action and all other just and proper relief; paragraph two of the cross-complaint demands judgment for $3,500 damages, the costs of the action and all other proper relief.

The appellants filed separate and several demurrers to both paragraphs of appellees' cross-complaint. The trial court overruled the appellants' demurrer to the

first paragraph of cross-complaint and sustained the demurrer to the second paragraph of the cross-complaint. Appellants then filed answer in denial to the first paragraph of cross-complaint. On the issues formed, trial was had, without the intervention of a jury, resulting in a judgment for the appellees on said paragraph of cross-complaint, from which judgment this appeal is taken.

A careful examination of the record in this case discloses the appellants' contention, that there was no delivery of the deed to the property owned by them, was well taken. The record shows that on December 4, 1954, Thomas Lyle Pringle had a deed to certain property, then owned by him and Mrs. Pringle, as tenants by the entireties, prepared by Mrs. Mary Fletcher, who was then secretary-treasurer of the Plainfield Building and Loan Association. Mrs. Fletcher was to hold the deed until certain conditions were met before delivering the same to the Broadstreets, that Mrs. Fletcher pinned a note to said deed containing said instructions. That thereafter, by inadvertence, error, and mistake, said deed was placed with other deeds which were to be sent to the county recorder's office for recording, and was there recorded and afterwards returned to the office of the Plainfield Building and Loan Association where it still remains. At no time did it appear that the conditions under which the delivery of the deed to the Broadstreets was being held up, had been performed.

The appellees predicate their theory as to the delivery of the deed on the premise that Mrs. Fletcher was acting as the agent for both parties, that the appellants authorized her to record the deed and therefore, that a recording of the Pringle deed constituted a delivery thereof to the appellees. The theory

of the appellees herein is not substantiated by the record; consequently the decision of the trial court must be reversed.[1] Because of the result which we have reached it is not necessary to decide the other questions presented. This cause is therefore remanded with instructions to sustain the appellants' motion for a new trial and for further proceedings not inconsistent with this opinion.

Landis, C. J. and Bobbitt, J., concur.

Arterburn, J., concurs in result.

Achor, J., dissents with opinion.

### DISSENTING OPINION

ACHOR, J.—This is an action to cancel and set aside a deed which had been executed and recorded in connection with the exchange of properties between the parties. Since the recorded title to the real estate was in the defendant (appellee), appellee was the presumptive owner of the property[1a] and the burden was upon the appellant (plaintiff) to prove that he was entitled to the equitable relief sought.

Appellant in this case alleges that the deed was left with the scrivener "in escrow" for recording, but subject to instructions by him and that the deed was recorded by mistake without his authorization.

Obviously the trial court, which made a negative

---

1. *Fitzgerald, Trustee* v. *Goff* (1884), 99 Ind. 28; *Smithson* v. *Bouse* (1917), 67 Ind App. 66, 118 N. E. 970; *Fifer* v. *Rachels* (1901), 27 Ind. App. 654, 62 N. E. 68; *Rogers et al.* v. *Eich* (1896), 146 Ind. 235, 45 N. E. 93; *Bercot* v. *Velkoff* (1941), 111 Ind. App. 323, 41 N. E. 2d 686; *Henry et al.* v. *Carson* (1884), 96 Ind. 412; *Freeland* v. *Charnley et al.* (1881), 80 Ind. 132; *Anderson et al.* v. *Anderson et al.* (1890), 126 Ind. 62, 24 N. E. 1036; *McColley* v. *Binkley* (1918), 69 Ind. App. 352, 121 N. E. 847; *Bellin* v. *Bloom et ux.* (1940), 217 Ind. 656, 28 N. E. 2d 53.

1a. ". . . a presumption of delivery arises where a deed is shown to have been executed, acknowledged, and recorded." 26 C. J. S. p. 695.

finding for the plaintiff, did not consider that appellant had sustained this burden of proof. For this court to reverse the trial court, it must appear that all the evidence and inferences which might be reasonably drawn therefrom were of such compelling force in favor of the plaintiff that no reasonable person could find otherwise than for the plaintiff. This court has otherwise stated the rule as follows:

> "If the undisputed evidence entitles the one who has the burden of proof to a verdict which has been denied him, such verdict is contrary to law...
>
> " 'It is only where the evidence is without conflict and can lead to but one conclusion, and the trial court has reached an opposite conclusion, that the decision of the trial court will be set aside on the ground that it is contrary to law.' *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 532, 104 N. E. 2d 669." *Hinds, Executor, Etc.* v. *McNair et al.* (1955), 235 Ind. 34, 41, 129 N. E. 2d 553.
>
> See also: *State ex rel. Flaugher* v. *Rogers* (1948), 226 Ind. 32, 37, 77 N. E. 2d 594; *Wilson, Admx.* v. *Rollings* (1938), 214 Ind. 155, 158, 14 N. E. 2d 905.

And in applying the above rule, this court in reviewing the judgment of a trial court has held that we will consider only the evidence most favorable to the judgment, since the trial court had the right to weigh all the evidence and to ignore that which in his opinion he had cause to discredit. *Watson* v. *Watson* (1952), 231 Ind. 385, 388, 108 N. E. 2d 893; *N. Y. Central Ry. Co.* v. *Milhiser* (1952), 231 Ind. 180, 189, 106 N. E. 2d 453, 108 N. E. 2d 57; *Gamble* v. *Lewis* (1949), 227 Ind. 455, 460, 85 N. E. 2d 629; *McGuire* v. *Indianapolis Broadcasting, Inc.* (1945), 223 Ind. 505, 510, 61 N. E. 2d 642; *McKee* v. *Mutual Life Ins. Co. of New York* (1943), 222 Ind. 10, 13, 51 N. E. 2d 474,

It occurs to me that the basic fallacy of the majority opinion is that it relies upon the evidence most favorable to appellant rather than that favorable to the appellee.

In this case the judgment is supported by the following evidence. The defendant (appellee) testified that he was present at all times while the transaction was occurring between himself, the scrivener Mrs. Fletcher and the appellants. That both parties left the deed with Mrs. Fletcher for recording; that appellant paid her the recording fee; and that "not a thing" was said "about holding any deeds."

Furthermore, the fact that the parties intended their actions, above described, should close the transaction (except perhaps for the continuation of abstracts) is further evidenced by the fact immediately thereafter appellants assigned over to appellees the obligation of the mortgage on their property and asked appellees' tenants for possession. The trial court had the right to accept this testimony to the exclusion of all conflicting testimony, and base his decision thereon.

We are not permitted to consider the testimony of either Mrs. Fletcher or the appellant for the purpose of reversing the judgment. However, if we consider the testimony of Mrs. Fletcher we find that it is consistent with the decision of the trial court.

First, on examining her testimony we note that Mrs. Fletcher did not testify that the agreement with appellant to hold the deed was made with either the knowledge or consent of the appellee. Under such circumstances appellee could have compelled performance of his contract with appellant and Mrs. Fletcher, notwithstanding any separate agreement between her and the appellant, to which appellee was not a party.

Secondly, if we consider that the parties by agreement placed the deed with Mrs. Fletcher in escrow to be recorded by her, subject only to the condition as evidenced by memorandum attached to the deed that she was "to hold the deed *until the abstract is continued*," then under such circumstances appellant could not reclaim the deed from the escrow, except for appellees' failure to provide merchantible abstract of title. And upon providing such abstract of title appellee could have compelled performance by the escrow, had she not already recorded the deed.[2] Appellants admit that an abstract of title was continued and delivered to them, and there is no question regarding the sufficiency of the abstract of title. On the basis of these

2.  "If a deed has been effectively delivered to a third person for the use of the grantee, the grantee has the right to have the deed remain in the possession of the custodian until the happening of the event on which he is entitled to take possession, and a change of intention on the part of the grantor, or the death of the grantor or grantee, will not defeat the delivery. . . .

"Where a deed is given to a third person to hold until the performance of some act by the grantee or the happening of some contingency, it does not operate as a delivery to the grantee until the performance of such condition, . . ." 26 C. J. S. §43, pp. 694, 695.

"It is essential (to an escrow) that when the instrument is deposited it should be intended to pass beyond the control of the depositor and that he should actually lose control of it; for in case the deposit is made in furtherance of a contract between the parties, the contract must be so complete that it remains only for the grantee or obligee or another person to perform the required condition, or for the event to happen, to have the instrument take effect according to its import. . . .

". . . It therefore follows that although the deposit may be withdrawn or revoked at any time before it is fully consummated by acceptance by the grantee of the terms of the escrow agreement, yet, when it (the agreement) has been consummated and a valid deposit of the instrument as an escrow made, neither party can revoke without the consent of the other; . . ." 30 C. J. S. *Escrows*, pp. 1198, 1199.

"On performance of the condition the grantee or obligee has a right of action to secure delivery, and such right will be enforced by a decree of court. Thus a bill in equity will lie to compel the delivery of a deed held as an escrow where the grantee has done all in his power to fulfill the condition and has been prevented from doing so by the sole act of the grantor, or, on demand and refusal, he may maintain an action of detinue to recover the instrument. . . ." 30 C. J. S. *Escrows*, pp. 1219, 1220.

facts appellants failed to make a case for cancellation of the deed.

Finally, appellants assert that since the escrow agreement was oral it cannot be considered by reason of the statute of frauds relating to the transfer and sale of real estate. However, the law upon this subject is clearly to the contrary. It is only necessary that the contract for the sale or exchange be in writing or that the deed contain substantially the provisions of the contract.[3] It is not necessary that the escrow agreement be in writing. *Freeland* v. *Charnley et al.* (1881), 80 Ind. 132. In the instant case the contract of exchange was in writing.[4]

Therefore, even though delivery was in escrow, appellants were bound by the escrow agreement that, upon "continuation of the abstract," the deed was to be recorded and delivered to the appellees.

NOTE.—Reported in 158 N. E. 2d 451.

3. ". . . while delivery of a deed placed in escrow may be enforced, although the escrow agreement is not in writing, since the statute of frauds does not apply to the escrow agreement itself, this rule does not permit enforcement of a contract of sale or exchange of real property unless there is a valid contract for the sale or exchange sufficient under the statute of frauds." 19 Am. Jur. *Escrow* §12, pp. 429, 430.

4. "A . . . we talked the trade over. They came to my house three or four times, wanting to make the exchange, and, of course, *we wrote the contract* to make the change and they were supposed to give me possession over there and they were to get possession over there, and I had my renter move out." (Our italics.) Direct examination of Wiley Broadstreet, Tr. p. 97, ll. 24-29.