INDUSTRIAL SCAVENGER SERVICE, INC. *v.* SPEEDWAY
STATE BANK.

[No. 20,025.   Filed November 18, 1964.]

H. Earl Capehart, Jr., Richard D. Wagner, Krieg DeVault, Alexander & Capehart, of counsel, all of Indianapolis, for appellants.

William H. Traylor, Emsley W. Johnson, Jr., Johnson & Weaver, of counsel, all of Indianapolis, for appellee.

MOTE, J.—Appellee brought an action below on a promissory note and to foreclose a chattel mortgage. The pleadings finally presented the following issues:

(1) Was appellant an accommodation party and surety with respect to the note and chattel mortgage?

(2) Was the execution of the note and mortgage in excess of the corporate powers of appellant and thus *ultra vires*?

(3) Did R. N. Kroot in his capacity as president of appellant have authority to execute the note and chattel mortgage on its behalf?

(4) Did appellee have the right to apply appellant's deposit on the amount due on the said promissory note?

(5) What is the effect of a plea of *non est factum* filed by appellant as to the note and chattel mortgage upon which the action was predicated?

The trial court made a general finding in favor of appellee on its amended complaint and against appellant on its counter-claim, and entered judgment in favor of appellee and against appellant in the sum of Twelve Thousand, Seven Hundred and Eighty-one Dollars and

Four Cents ($12,781.04), including interest and attorneys' fees on the note, together with interest from the date of judgment until paid. The chattel mortgage was ordered foreclosed.

There was a motion filed by appellant for a finding in its favor, which was denied prior to the judgment. A Motion for New Trial was filed and overruled by the succeeding judge of the court and, on motion, the ruling was set aside and the former judge who presided at the trial overruled said motion.

Evidence adduced at the trial tends to disclose the following:

Appellant, Industrial Scavenger Service, Inc., was engaged in the business of hauling and disposing of industrial trash in the year of 1959, during which time R. N. Kroot was its President. At the same time he was President of Kroot & Son, Inc., which was engaged in the scrap business. The business pursuits of the two companies were of a dissimilar nature. Appellant rented upstairs office space from Kroot & Son, Inc., at 628 West Washington Street, Indianapolis, Indiana. Kroot & Son, Inc. occupied office space on the first floor of the same building. The two companies shared secretarial help, each paying separately for the services individually rendered. At times appellant rented trucks from Kroot & Son, Inc., and on one occasion at least sold to it some scrap which may have involved the sum of Fifty ($50.00) Dollars. There may have been limited loans of money for a period of a few days from one company to the other; however, it is doubtful if appellant ever borrowed any money from Kroot & Son. At the time Kroot's stock in appellant was turned back to the appellant he owed individually Seven Hundred and Fifty ($750.00) Dollars to appellant.

The officers, directors, and shareholders of appellant at the time in question were Kroot, who was president of both companies, and Morris Raff, the Secretary-Treasurer who later became President, and each of whom owned Thirty-two (32) shares of the outstanding common capital stock, and an attorney who organized both corporations, had One (1) share standing in his name.

It appears that in May of 1959, Mr. Kroot, the president of both companies, had a conversation with Mr. Raff, Secretary-Treasurer of appellant, in which it was stated that Kroot & Son, Inc. was in financial difficulties and needed to borrow money. Mr. Raff refused to "go along" with Mr. Kroot's request for assistance on the part of appellant in securing a loan to Kroot & Son, Inc. at the appellee bank.

On June 2, 1959, application for an installment loan of Twenty-five Thousand ($25,000.00) Dollars was made to appellee bank by Kroot & Son, Inc., which said application was signed by said Kroot & Son, Inc., by R. N. Kroot, President. At the time, said Kroot & Son, Inc. was indebted to appellee on a commercial note in the sum of Fifteen Thousand, One Hundred and Twenty-five ($15,125.00) Dollars.

Appellee bank was unwilling to grant the loan application without further security. As a result, and without knowledge on the part of the directors and Mr. Raff, Secretary and Treasurer, as well as the other shareholders of appellant, Mr. Kroot executed and delivered to appellee a promissory note in the sum of Twenty-nine Thousand, Three Hundred and Seventy-five ($29,375.00) Dollars, due in monthly installments of One Thousand ($1,000.00) Dollars each, and signed by Kroot & Son, Inc., by R. N. Kroot, President, and In-

dustrial Scavenger Service, Inc., by R. N. Kroot, President, the said Kroot being one and the same person. The promissory note included not only the Twenty-five Thousand ($25,000.00) Dollars for which application was made, but also add-ons including interest. At the request of Mr. Kroot the bank applied Fifteen Thousand, One Hundred and Twenty-five ($15,125.00) Dollars to the balance due on an existing commercial loan evidenced by the note of Kroot & Son, Inc., and the balance of the funds, in the sum of Nine Thousand, Eight Hundred and Seventy-five ($9,875.00) Dollars, was credited to the checking account of Kroot & Son, Inc. Appellant received none of the funds so borrowed.

To secure the payment of said promissory note a chattel mortgage on property and vehicles owned by said Kroot & Son, Inc., and a 1958 White Packer (truck), Model Number 3020, Identification Number 488028, valued in the sum of Fifteen Thousand ($15,000.00) Dollars and owned by appellant, previously and then mortgaged by appellant to another bank to secure certain obligations, was delivered to appellee. The said chattel mortgage was signed in the name of Kroot & Son Company, Inc. and acknowledged by R. N. Kroot as President. Industrial Scavenger Service, Inc., appellant, is shown to have executed said chattel mortgage by R. N. Kroot, President, without acknowledgment. The original certificate of title to said White Packer (truck) appears to have been deposited with appellee.

A duplicate certificate of title to the 1958 White Packer model, above referred to, was later obtained by appellant without knowledge of the officers and directors of appellant, except Mr. Kroot, and placed in the files of appellant.

The articles of incorporation of appellant set forth the following purposes for which it was organized:

" ARTICLE II

Purposes

The purposes for which the Corporation is formed are:

To engage in an industrial and commercial scavenger service. To engage in the buying, selling and dealing in industrial and commercial scrap, salvage, refuse, rubbish, trash, junk, offal, garbage and debris. To engage in the collection of industrial and commercial scrap, salvage, refuse, rubbish, trash, junk, offal, garbage and debris. To engage in the operation and maintenance of depositories at industrial and commercial locations for the accumulation of scrap, salvage, refuse, rubbish, trash, junk, offal, garbage and debris. To engage in the maintenance of a collection and pick-up service therefor. To engage in the business of transporting said property by motor vehicle, and other means of conveyance, as a common carrier, private carrier, contract carrier, or otherwise. To engage in the maintenance of disposal facilities for said property. To acquire, own, hold, use, lease, mortgage, pledge, sell, convey or otherwise dispose of property, real and personal, tangible and intangible; to acquire, own, operate, lease and dispose of like businesses; to do all and everything necessary, suitable and proper for the accomplishment of any of the purposes or the attainment of any of the objects or the furtherance of any of the powers hereinbefore setforth, either alone or in association with other corporations, firms or individuals, and to do every other act or acts, thing or things incidental or appurtenant to or growing out of or connected with the aforesaid objects or purposes or any part or parts thereof, provided the same be not inconsistent with the laws under which this corporation is organized."

On the 13th day of April, 1959, Mr. Kroot and his wife, Georgia M. Kroot, personally executed their guarantee of account to appellee, in the sum of Thirty Thousand ($30,000.00) Dollars, for the extension of credit both to Kroot & Son Company, Inc. and Plastic Proces-

sors, Inc. However, both of said individual guarantors have been declared and adjudged bankrupt.

Appellee bank had never made a loan to appellant. However, on April 13, 1959, Mr. Raff, Secretary-Treasurer of appellant, executed, and there subsequently was delivered to appellee, a corporate banking account and borrowing resolution, the significant parts of which read as follows:

"Be It Resolved, that the Speedway State Bank be and hereby is designated a depositary in which the funds of this Corporation may be deposited by its officers, agents, and employes, and that the President Robert N. Kroot, Secretary-Treas.—Morris Raff shall be and each of them hereby is authorized to endorse any and all checks, drafts, notes, bills of exchange, and orders for the payment of money, either belonging to or coming into possession of this Corporation for deposit or cashing or other negotiation. Endorsements for deposit may be by the written or stamped endorsement of the company without designation of the person making the endorsement.

Be It Further Resolved, that the

| President — Robert N. Kroot — Singly |
| Secretary-Treas. — Morris Raff — Singly |
| Sales Manager — Kenneth D. McCoy |
| Secy.                — Lila Owens |

} Jointly

(Titles of officers and/or other persons authorized to sign checks: e.g., President, Treasurer, etc.: also, please indicate in what manner the above-named officers are to sign—singly, any two, or jointly, etc.)

of this Corporation (are) (is) authorized to SIGN ANY AND ALL CHECKS, DRAFTS, AND ORDERS, including orders or directions in informal or letter form, against any funds at any time standing to the credit of this Corporation with the said Bank, and/or against any account of this Corpora-

tion with the said Bank, and that the said Bank hereby is authorized to honor any and all checks, drafts and orders so signed, including those drawn to the individual order of any such officer and/or other person signing the same, without further inquiry or regard to the authority of said officer(s) and/or other person(s) or the use of said checks, drafts and orders, or the proceeds thereof.

Be It Further Resolved, that the

President, Robert N. Kroot—Singly

(Please indicate in what manner the above named officers are to sign—singly, any two, or jointly, etc.)

of this Corporation (are) (is) authorized to borrow from time to time on behalf of this Corporation from the said Bank such sums of money for such times and upon such terms as may to them, or any of them, seem advisable, and to execute in the name of the Corporation notes, drafts, or agreements for the re-payment of any sums so borrowed, and they and each of them are hereby authorized to discount with the said Bank any of the notes, bills receivable or acceptances held by this Corporation upon such terms as they may deem advisable and to pledge or hypothecate as security to said Bank for any indebtedness for which this Corporation is liable any of the notes, bonds, stocks, bills receivable, warehouse receipts and/or other documents, accounts, securities and/or property of the Corporation, and to execute and deliver any and all endorsements or instruments of assignment or transfer which may be necessary or proper in such cases effectually to transfer to the said Bank the property so hypothecated or delivered:

Be It Further Resolved, that each of the foregoing resolutions shall continue in force until express written notice of its rescission or modification has been received by the said Bank, but if the authority contained in them should be revoked or terminated by operation of law without such notice, it is resolved and hereby agreed for the purpose of inducing the said Bank to act thereunder, that the said Bank shall be saved harmless from any loss

suffered or liability incurred by it in so acting after such revocation or termination without such notice.

I further Certify that the following named persons are the officers of the said Corporation, duly qualified and now acting as such:

President /s/ Robert N. Kroot

Vice-President

Vice-President

Secretary /s/ Morris Raff

Treasurer /s/ Morris Raff

Asst. Secretary

Asst. Treasurer
"

On or about January 12, 1960, upon learning of the bankruptcy of Kroot & Son, Inc., as well as its President, Mr. Kroot, and his wife, Georgia Kroot, appellee bank, who then had received payment from Kroot & Son, Inc. of five (5) monthly installments totaling Five Thousand ($5,000.00) Dollars on the note in question, charged appellant's account, then in the sum of One Thousand, Ninety-one Dollars and One Cent ($1,091.01), to apply on the delinquent installment loan evidenced by the note in question, and later instituted the action below for the balance due on said note, secured by chattel mortgage, as aforesaid, and sought foreclosure on the said 1958 White Packer (truck).

Among other pleadings filed in the trial court, appellant sought by counter-claim the return of the money debited to appellant's account in the sum of One Thousand, Ninety-one Dollars and One Cent ($1,091.01) and a plea of *non est factum* which, under the statute then applying, required appellee to prove the due and lawful execution of the said note and of the said chattel mortgage.

It is apparent that none of the officers and directors and shareholders, except Mr. Kroot who then was President and owned thirty-two (32) of the sixty-five (65) outstanding shares of the common capital stock of appellant, was in any wise apprised of the purported execution of said note and mortgage or of the application of the funds derived from said transaction to obligations then existing of Kroot & Son to said bank, and the crediting to the account of said Kroot & Son of the balance of the funds from said transaction.

In its Assignment of Error appellant urges that the trial court erred in overruling its Motion for New Trial for a number of reasons. In view of the decision which we have reached we deem it unnecessary specifically to remark upon all of said reasons. Appellant urges, and we will consider its assertions, that the decision of the court is not sustained by sufficient evidence; the decision is contrary to law; and certain alleged errors occurring at the trial.

The contentions of the parties to this appeal are sharply in dispute. These contentions involve whether appellant was an accommodation maker; whether the execution of the note and chattel mortgage in the manner shown by the record was *ultra vires*; whether R. N. Kroot, in his capacity as President of appellant, had authority to execute the instruments and bind appellant; whether appellee had a right as shown by the record to debit appellant's account; and also whether the two instruments were admissible in the evidence. These matters seem to be somewhat interrelated, particularly in view of the plea of *non est factum* filed by appellant.

§2-1033, Burns' 1946 Repl., provides:

"Where a pleading is founded on a written instrument, or such instrument is therein referred to, or when an assignment, in writing, of such instru-

ment is specially alleged in a pleading, such instrument or assignment may be read in evidence on the trial of the cause without proving its execution, unless its execution be denied by pleading under oath, or by an affidavit filed with the pleading denying the execution. And when a written instrument or assignment is so pleaded or referred to, proof of the names of the makers, assignors, obligors, assignees, payees or obligees shall not be necessary unless the same shall be denied by a pleading under oath, or by an affidavit filed as aforesaid. . . ."

Such a plea rested the burden of due execution of the instruments on appellee, according to *Elkhart Hydraulic Company* v. *Turner, Receiver* (1908), 170 Ind. 455, 84 N. E. 812, in which it was stated:

"An issue over the execution of a written instrument by an individual is usually determined by the genuineness of his signature, but a corporation can act only by means of agents, and has no characteristic autograph. A denial by a corporation of the execution of a writing purporting to have been signed in its behalf by a particular person, necessarily challenges the authority of such alleged agent, and is more likely to involve that question than the authenticity of the handwriting employed. . . .

"The answer of *non est factum* imposed upon the appellee in this case the burden of proving that these notes were executed by appellant—that is by its agent acting with express or apparent authority to make such contracts or to affix its name thereto and thereby make them binding obligations. . . .

" . . . proof merely that appellant's name was subscribed to the notes by Brodrick, while acting as president, was not sufficient to make a *prima facie* case and entitle the notes to be read in evidence, but it was incumbent on appellee to go farther and show that the president was authorized by the board of directors or by-laws to execute the notes, or had been given apparent authority by the

board to do so, by being entrusted with the general management and conduct of the corporate business· or by having been habitually permitted to borrow money and to execute notes in course of its business. . . . " See: *McGuire* v. *Indianapolis Broadcasting, Inc. et al.* (1945), 223 Ind. 505, 61 N. E. 2d 642; *First Merchants National Bank & Trust Company of Lafayette, etc.* v. *Murdock Realty Company et al.* (1942), 111 Ind. App. 226, 39 N. E. 2d 507.

Evidently to sustain its burden in the last mentioned proposition, appellant's corporate borrowing resolution and a copy of appellant's articles of incorporation, including its "Purposes", above referred to, were introduced into the evidence. In these we find neither in the "Resolution" nor in the "Purposes" a sound basis for sustaining appellee's contention that R. N. Kroot had authority to execute the note and chattel mortgage and thus to bind appellant to appellee according to the tenor of the two instruments. So far as we have been able to comprehend from the authorities examined, we have not encountered a single decision which does not hold that the purported execution of the two instruments in the manner shown by the record was *ultra vires*.

The articles of incorporation of appellant do not authorize it to do other than those things which are thought to be of benefit to the corporation itself; nor does the "Corporate borrowing resolution" of appellant, a certified copy of which was in the hands of appellee at the time of the transaction, authorize the borrowing of funds from appellee, except for the use and benefit of appellant. It will be noted that all the funds derived from such loan transaction were credited to the exclusive benefit of R. N. Kroot & Son, Inc. In the case of *First Merchants National Bank & Trust Company of*

*Lafayette, etc.* v. *Murdock Realty Company et al.* (1942), *supra,* this court quoted with approval from *Best Brewing Co.* v. *Klassen* (1900), 185 Ill. 37, 57 N. E. 20, as follows:

> " 'It is no part of the ordinary business of commercial corporations, and, *a fortiori,* still less so if non-commercial corporations, to become surety for others. Under ordinary circumstances, without positive authority in this behalf in the grant of corporate power, all engagements of this description are *ultra vires,* whether in the indirect form of going on accommodation bills, or otherwise becoming liable for the debts of others. . . . ' "

Although the *First Merchants National Bank* case, *supra,* from which we have just quoted, involved a relationship somewhat different from the one now before us, it is a corollary and we quote further from it:

> "The appellant contends, however, that the corporation had a right to mortgage its real estate to secure the payment of its obligations and that the mortgage is, therefore, a valid and binding obligation. The appellant further contends that the defense of *ultra vires* is not available to the appellees or any of them. While the right to convey or mortgage real estate owned by a corporation is generally recognized as within its corporate powers, yet, this right is limited to the furtherance of the legitimate business of the corporation. This proposition is recognized by our own court in the case of *Warren Creamery Co.* v. *Farmers State Bank* (1924), 81 Ind. App. 453, 143 N. E. 635. On the other hand, 'The proposition is well supported by authority that it is ultra vires of a corporation to enter into contracts of guaranty or suretyship not in furtherance of its business, unless given express authority to do so.' 13 Am. Jr., §819, p. 827."

As in the instant case, quoting further from the case of *First Merchants National Bank, supra:*

"It seems clear to us, however, that the action of the Murdock Realty Company in mortgaging its assets to secure or guarantee the payment of the individual debts of its corporate officers . . . could not, by any stretch of the imagination, be said to be a furtherance of the business of the corporation. . . ."

If we are to follow, which we do, the legal principles of the last above cited case, we cannot but conclude that the purported execution by R. N. Kroot, as President of appellant, under the circumstances revealed by the record, was not in the furtherance of appellant's corporate purposes; that it is *ultra vires* and not binding on appellant and, further, that the introduction into the evidence of the instruments sued upon was reversible error. See: *Crowley et al.* v. *First-Merchants National Bank of Lafayette et al.* (1942), 112 Ind. App. 80, 41 N. E. 2d 669.

This court holds that the Motion for New Trial should have been sustained and that appellant was an accommodation party to the instruments sued upon; that R. N. Kroot, President of appellant, had no legal right to execute the instruments for and in behalf of appellant; that the execution of said instruments, under the circumstances revealed by the evidence, was *ultra vires* and said instruments are not binding upon appellant; and that appellee had no authority to debit appellant's account and apply the amounts so debited to the promissory note or to foreclose the chattel mortgage.

Judgment reversed.

Hunter, C. J., Pfaff, J., concur.

Kelley, J., not participating.

NOTE.—Reported in 202 N. E. 2d 289.